**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE: | CASE NO. 14-04521-BKT13 |
| | Chapter 13 |
| HECTOR R. MARMOL TORRES,<br>MIREIRA LANTIGUA GARCIA | |
| Debtor(s) | |
| HECTOR R. MARMOL TORRES,<br>MIREIRA LANTIGUA GARCIA | Adversary No. 18-00027 |
| Plaintiff(s) | |
| vs. | |
| AUTORIDAD DE ACUEDUCTOS Y<br>ALCANTARILLADOS | FILED AND ENTERED ON 05/13/2020 |
| Defendant | |

**OPINION AND ORDER**

Before this court is a *Motion for Summary Judgment* [Dkt. No. 62], filed by Autoridad de Acueductos y Alcantarillados (hereinafter "PRASA" or "Defendant") and a *Counter Motion for Summary Judgment* [Dkt. No. 64] filed by Hector R. Marmol Torres and Mireira Lantigua Garcia (hereinafter, "Debtors" or "Plaintiffs").

For the reasons stated herein, Defendant's Motion for Summary Judgment and Plaintiffs' Counter Motion for Summary Judgment are hereby DENIED.

**I.      Standard of Review**

The role of summary judgment is to look behind the facade of the pleadings and assay the

1

parties' proof in order to determine whether a trial is required. Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). Pursuant to Fed. R. Civ. P. Rule 56(c), made applicable in bankruptcy by Fed. R. Bankr. P. 7056, a summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). As to issues on which the movant, at trial, would be compelled to carry the burden of proof, it must identify those portions of the pleadings which it believes demonstrates that there is no genuine issue of material fact. In re Edgardo Ryan Rijos & Julia E. Cruz Nieves v. Banco Bilbao Vizcaya & Citibank, 263 B.R. 382, 388 (B.A.P. 1st Cir. 2001). A fact is deemed "material" if it could potentially affect the outcome of the suit. Borges, 605 F.3d at 5. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. at 4. The court must view the evidence in the light most favorable to the nonmoving party. Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 26 (1st Cir. 2004). Therefore, summary judgment is "inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record." Rijos, 263 B.R. at 388.

Although this perspective is favorable to the nonmoving party, she still must demonstrate, "through submissions of evidentiary quality, that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006). Moreover, "[o]n issues where the non-movant bears the ultimate burden of proof, [she] must present definite, competent evidence to rebut the motion."

2

Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). These showings may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). The evidence offered by the nonmoving party "cannot be merely colorable, but must be sufficiently probative to show differing versions of fact which justify a trial." Id.; See also, Horta v. Sullivan, 4 F.3d 2, 7-8 (1st Cir. 1993) (holding that the materials attached to the motion for summary judgment must be admissible and usable at trial). "The mere existence of a scintilla of evidence" in the nonmoving party's favor is insufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); González-Pina v. Rodríguez, 407 F.3d 425, 431 (1st Cir. 2005).

In the summary judgment motions presently before the court, Plaintiffs and Defendant argue that there are no genuine issues as to any material facts and that therefore they are entitled to judgment as a matter of law. Plaintiffs and Defendant contend the following facts to be undisputed:

On May 30, 2014, Plaintiffs filed a Chapter 13 Bankruptcy petition, Case No. 14-04521-BKT. Plaintiffs, however, did not list PRASA as a creditor neither in Schedules F and /or G nor in the master address list.

As of the date of filing for relief under Chapter 13, Debtors had several service accounts with PRASA, described as follows:

(1) Rental property 1, PRASA account # 20441556: URB. LEVITTOWN 1RA SECCION, 1094 PASEO DAMASCO, TOA BAJA, PR 00949, a two-story structure with four (4) residential rental units, wholly owned by PLAINTIFFS. One (1) water meter servicing all apartment units of that property.

(2) Rental Property 2, PRASA account # 20392381: URB. LEVITTOWN 6TA SECCION, EG-01 CALLE ASTOL BUSATTI, TOA BAJA, PR 00949, a

3

two-story structure with three (3) residential rental units, wholly owned by PLAINTIFFS. One (1) water meter servicing all units of that property.

(3) Rental Property 3, PRASA account # 20407792: URB. LEVITTOWN 5TA SECCION, BA-35 CALLE JOAQUIN BOSCH, TOA BAJA, PR 00949, a two-story structure with two (2) residential rental units, owned by PLAINTIFFS' son, Hector Antonio Marmol Lantigua, but administered and leased by DEBTORS-PLAINTIFFS. One (1) water meter with an account in name of DEBTORS-PLAINTIFFS servicing all units of that property.

Debtors did not list a debt with PRASA pending the determination of a Debtors' administrative claims (#AA12- 067, #AA12-190, #AA12-307, and #AA-14-207) for adjustments decreed by PRASA of certain prepetition invoices for water/sewage utility services billed. See, Dkt. No. 1, Statement of Financial Affairs, item 4, of the lead case.

The Amended Chapter Plan dated January 14, 2015 did not assume any executory contracts with PRASA. See, Dkt. No. 59 of the lead case.

The Amended Chapter Plan dated January 14, 2015 was confirmed on February 2, 2015, without any mention as to the assumption of the Executory contracts with PRASA. See, Dkt. No. 64 of the lead case.

Upon the final determination of Debtors' administrative claim with PRASA claims (#AA12-067, #AA12-190, #AA12-307, and #AA-14-207), on June 7, 2016 the resulting debts were included in the lead bankruptcy and the executory contracts were listed as well. See, Dkt No. 79, Amended Schedules F and G of the lead case.

In the Amended Schedule G, PRASA's accounts #20441556 and #20392381 were listed as rejected while accounts #2042562 and 20407792 were listed as to be assumed. See, Dkt No. 79, Amended Schedule G of the lead case.

4

Proof of Claim #11 for such pre-petition debts was filed and allowed to be paid through a post confirmation plan modification with an attached revision by the Puerto Rico Tribunal of General Justice, Tribunal of Appeals for the Region of San Juan (Case No. KLRA201501296) of the adjustments determined by PRASA, confirmed on revision by the San Juan Superior Court, of certain pre-petition invoices for water/sewage utility services billed. The judicial revision was for administrative claims #AA12-067, #AA12-190, #AA12-307, and #AA-14-207. See, Claim #11 of the lead case.

Proof of Claim #11 filed by Debtors on behalf of PRASA was neither objected by PRASA nor superseded by a claim of its own.

On July 11, 2017, Debtors paid PRASA a deposit of $500.00. The same was applied to the same account of Calle Astol Busatti. (8/11/2016 Invoice ending in X2381).

On July 12, 2017, Debtors paid PRASA another deposit of $500.00 the deposit was applied to the same account of Calle Joaquin Bosch. (8/12/2016 Invoice ending in x7792).

Subsequently, PRASA disconnected the utility services of the three accounts, as follows:

1. On April 13, 2016 during an administrative hearing, the Plaintiff said that he filed for bankruptcy. The administrative hearing being held was for account number 2381. (Cases number, AA-14-207 and AA-14-207-A1.) Administrative hearing was to determine the correction of water charges in invoices from 05/06/2014 and 06/05/2014 in the amount of $203.16 each. Case AA-14-207 A1 included invoices from 1/10/13 in the amount of $196.39; 3/08/13 and 4/07/13 for $194.42 each; and 05/06/13 and 6/15/13 for $127.61 each. At the date specified above the outstanding

5

balance for the account was $3,364.22. The pre-petition outstanding balance was only $317.16. The administrative judge stayed the procedures and the case was referred to PRASA's Bankruptcy division.

2. On May 16, 2016 PRASA'S bankruptcy department codified account 2381 in PRASA's computerized administrative system with a "Q" meaning that all accrued debts before said date were protected by bankruptcy law. The remaining invoices were protected by state Law 33 from June 27, 1985.

3. On June 7, 2016, Plaintiffs filed a separate motion to file Proofs of claim on behalf of PRASA including the judgment issued by Commonwealth's Court of Appeals (which was issued while the stay order was already in effect) on the amount of $5,082.10. The said judgment only included litigated charges related to account 7792. See, Dkt. No. 80 of the lead case).

4. On July 6, 2016, this Honorable Court granted Debtors' unopposed Motion Requesting Leave to File Claims after the Bar Date. See, Dkt. No. 84 of the lead case).

5. Account 1556 was not codified with a "Q". The date PRASA received actual knowledge of the Bankruptcy the account had invoice from 04/01/2015 in the amount of $203.16 (protected by law 33 from suspension of service) at administrative review. The account had no other pre-bankruptcy outstanding balance.

PRASA discontinued water service on two (2) occasions in account 7792 for the following post-bankruptcy debts:

(1) On January 11, 2017 for an outstanding balance of $1,780.02, unprotected by state law no. 33. Service was restored on January 13, 2017.

(2) On June 27, 2017, for an outstanding balance of $792.78. The service was restored on June 30, 2017.

PRASA discontinued Plaintiffs water service for account 1556 (PASEO DAMASCO) on three (3) different occasions, for post-bankruptcy debts.

(1) December 28, 2016 the outstanding balance was $251.20. Service was restored on December 29, 2016.

(2) July 12, 2017 with an outstanding balance of $358.52. Service was

6

restored on July 19, 2017.

(3) August 28, 2017, the outstanding balance was $297.20. Service was restored on August 29, 2017.

PRASA discontinued Plaintiffs water and sewer services for account 2381 (ASTOL BUSATTI) on two (2) occasions for post-bankruptcy debts:

(1) February 27, 2017, for an outstanding balance of $1,151.82 Service was restored on February 28, 2017.

(2) June 27, 2017 for and outstanding balance of $353.41. Service was restored on June 30, 2017.

## II.     Legal Analysis

After reviewing the Plaintiffs and Defendant's arguments, and the relevant law, this Court concludes that there are genuine issues as to material facts and that the moving parties are not entitled to judgment as a matter of law. In a motion for summary judgment, in order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense *or* demonstrate that the nonmoving party does not have sufficient evidence of an essential element to carry its ultimate burden of persuasion at trial. Lopez v. Corporacion Azucarera de Puerto Rico, 938 F.2d 1510, 1516-17 (1st Cir. 1991); High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir.1990). Regardless, in order to carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact. Id. Therefore, the primary inquiry this Court must decide first is whether the Plaintiffs and Defendant, as moving parties, carried this initial burden of production.

7

The merits of this instant case turn on Section 366 of the Bankruptcy Code. This Section lays out the rights and obligations of debtors as they seek to retain utility services after filing a bankruptcy petition. Section 366 provides:

> (a) Except as provided in subsection (b) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.

> (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

11 U.S.C. § 366.

By the operation of the Code, individual debtors and business debtors alike rely on the continuation of utility services throughout the pendant duration of their bankruptcy proceedings. This Court has previously stated that "[t]he term "utility" [in Section 366] is not defined in the Bankruptcy Code, but its ordinary meaning is "a service (such as light, power, or water) provided by a public utility." The term "public utility" is defined as "a business organization (as an electric company) performing a public service and subject to special governmental regulation." In re PMC Mktg. Corp., 501 B.R. 17, 24 (Bankr. D.P.R. 2013) (internal citations omitted).1

---

1 The Court in In re NE Opco, Inc., 501 B.R. 233, 255 (Bankr.D.Del. 2013), in deciding the question of whether electricity is a good, criticized this Court's approach in In re PMC Mktg. Corp., 501 B.R. 17 (Bankr.D.P.R. 2013) answering the same question. This Court previously decided this question based on Section 366 of the bankruptcy code, which is relevant to this instant case, that because of the monopolistic relationship between the two parties, the utility company and the consumer, the electricity in that case cannot be considered as a good because it qualifies as a service under Section 366. The NE Opco, Inc. Court points out that because electricity can be bought and sold at the wholesale level, electricity could potentially be sold as a good and end as a service. However, consider this scientific reality as explained by the New York Independent System Operator ("NYISO") website [see http://www.nyiso.com/public/about_nyiso/understanding_the_markets/wholesale_retail/index.jsp (last visited Dec.

8

This distinctive power utility companies possess in light of debtors bankruptcy prompted Congress to establish a bankruptcy provision that would prevent the threat of termination from being used to collect pre-petition debts that would not otherwise force utility companies to provide services that they may never receive payment for. See e.g., Begley v. Philadelphia Elec. Co. (In re Begley), 760 F.2d 46, 49 (3d Cir.1985). Seeking to strike a balance between the general right of a creditor to refuse to do business with a debtor post-petition, and the debtor's need for utility service, Congress enacted Section 366 as part of the Bankruptcy Code of 1978. In re Jones, 369 B.R. 745, 748-50 (B.A.P. 1st Cir. 2007); In re Best Products Co., 203 B.R. 51, 53 (Bankr.E.D.Va.1996); see also Hanratty v. Philadelphia Elec. Co. (In re Hanratty), 907 F.2d 1418, 1424 (3d Cir.1990); see also, In re Rivera, 12-05331 BKT, 2013 WL 5661477 (Bankr. D.P.R. Oct. 15, 2013). Section 366(a) bans utility companies from altering, refusing, or discontinuing service to, or discriminating against, a trustee or a debtor solely on the grounds that the debtor has not paid its prepetition debts when due. This Section fundamentally reveals the Congressional concerns of the monopoly powers

---

30, 2013)]:

> wholesale electricity is typically viewed as a service even within the wholesale to retail sale relationship. The relationship starts when a step-up transformer provides wholesale energy to a step-down transformer as a service, who in turn refines such high voltage energy into lower voltage electricity that is suitable for domestic and commercial use to individual consumers and homes.

Wholesale electricity, just like retail electricity providers, can effectively monopolize a given market. Accordingly, when a wholesale electricity company sells its unrefined service to a retail electricity company and such retail electricity company refines such service for consumer usage, these service-based relationships between the three different players, namely the wholesale provider, the retail provider, and the consumer, do not shift into goods based relationships. In other words, envision the following: a wholesale cell phone provider or a wholesale internet provider, upon their sale of such service to retail service providers, these retail service providers refine such service in order to tailor to their individualistic consumer preferences. This refinement does not morph a "service" into a "good." Moreover, a monopoly does not simply mean that a wholesale provider would potentially enter markets tailoring to individualistic preferences, it simply means that the wholesale provider could potentially enter new refined markets but may never do so. Regardless, parties' relationships must be examined to ensure congressional intent is adequately protected and to guard against unwarranted judicial activism.

9

exercised by most utility companies and therefore mandates these companies to provide debtors with initial services post-commencement of a bankruptcy proceeding. See e.g., In re PMC Mktg. Corp., 501 B.R. 17, 23-24 (Bankr. D.P.R. 2013) (("[Section 366] gives debtors protection from a cut-off of service by a utility because of the filing of a bankruptcy case. This section is intended to cover utilities that have some special position with respect to the debtor, such as an electric company, gas supplier, or telephone company that is a monopoly in the area so that the debtor cannot easily obtain comparable service from another utility.") (quoting, H.R.Rep. No. 95–595, at 350 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6306; S.Rep. No. 95–989, at 60 (1978), as reprinted in 1978 U.S.C.C.A.N. 5787, 5846.). Section 366(a)'s prohibition power, however, is not absolute. Rather, this prohibition is carefully balanced and is limited by Section 366(b)'s requirement that the trustee or debtor furnish "adequate assurance of payment" for post-petition service to the utility within 20 days after the filing of the petition. Case law reveals that Section 366(b) is often read as an exception to the automatic stay, thus permissibly allowing utility companies to alter, refuse or discontinue service for failure to provide adequate assurance of payment without recourse to the bankruptcy court. See, In re Jones, 369 B.R. 745, 748-50 (B.A.P. 1st Cir. 2007); see e.g., Carter v. South County Water System (In re Carter), 133 B.R. 110, 112 (Bankr.N.D.Ohio 1991) (establishing, in a chapter 13 case that, the utility's right to terminate service for debtor's failure to tender adequate assurance of payment under Section 366(b) is "self-executing" and that "a formal proceeding by the utility is not required."); see also, In re Penn Jersey Corp., 72 B.R. 981, 985 (Bankr.E.D.Pa.1987); In re Lease–A–Fleet, Inc., 131 B.R. 945, 949–50 (Bankr.E.D.Pa.1991); Marion Steel Co. v. Ohio Edison Co. (In re Marion Steel), 35 B.R. 188, 197 (Bankr.N.D.Ohio 1983). Debtors have a choice in exercising what the bankruptcy code

10

would consider as adequate assurance. The choice comes in two forms: (1) a deposit with the utility or (2) another security. Both may be modified by an order of court on request of a party in interest after notice and a hearing.

After examining the relevant background, this Court finds that the ultimate question the summary judgments hinge on is not what the parties have brought to the attention of the court, but rather, the relevant inquiry here is whether the Debtor provided adequate assurance of payment in due time as mandated by the Code. If a debtor fails to provide adequate assurance of payment, a majority of the bankruptcy courts have rested on the conclusion that Section 366(b) grants utility companies the unilateral right to terminate service. Johnson v. Philadelphia Elec. Co., 80 B.R. 30, 31 (E.D.Pa.1987); MFS Telecom, Inc. v. Motorola, Inc. (In re Conxus Communs.,Inc.), 262 B.R. 893 (D.Del.2001); Robinson v. Michigan Consol. Gas Co., 918 F.2d 579, 588 (6th Cir.1990) (establishing that, in a chapter 7 case, where a debtor provides adequate assurance of payment, it is well established that the utility may still terminate service upon the debtor's failure to pay for post-petition services); Robinson v. Michigan Consol. Gas Co., 918 F.2d 579, 588 (6th Cir.1990); Penn Jersey Corp., 72 B.R. at 985; Allen v. Philadelphia Elec. Co. (In re Allen), 69 B.R. 867, 876 (Bankr.E.D.Pa.1987). These courts reasoned that "if failure to provide adequate assurance of payment is grounds for a utility to terminate service, then failure to make post-petition payments likewise allows for termination without requesting permission from the bankruptcy court." In re Jones, 369 B.R. 745, 749 (B.A.P. 1st Cir. 2007). As seen above, the majority has authorized utility companies to terminate services for post-petition delinquencies without obtaining relief from stay. Another set of reasoning, leading to the same conclusion as above, is in line with the word "solely" found in Section 366(a), which some courts have found to imply that a utility may refuse to furnish

services on other grounds, but not because of the commencement of the bankruptcy case nor because of prepetition debt. These courts reasoned that a utility company may exercise discretion to refuse service to any debtor for any reason that would validly constitute a ground for refusal if that debtor was not in bankruptcy, with the single exception of nonpayment for past services. Memphis Light, Gas & Water Division v. Farley, 135 B.R. 292, 294 (W.D.Tenn.1991); Hendrickson v. Philadelphia Gas Works, 672 F.Supp. 823, 834 (E.D.Pa.1987); Morris v. Detroit Edison (In re Morris), 66 B.R. 28, 29 (E.D.Mich.1986); In re Webb, 38 B.R. 541, 544 (Bankr.E.D.Pa.1984); Begley v. Philadelphia Elec. Co. (In re Begley), 760 F.2d 46, 49 (3d Cir.1985) ("[t]he restriction on termination in section 366(a) bars only those terminations which issue "solely on the basis" that a debt incurred prior to the bankruptcy order, was not paid when due."). Conclusively, as the above cases imply, Section 366(a) does not seem to bar utility companies from terminating service as a result of debtors' failure to pay post-petition amounts owed.

### III.   Conclusion

After a comprehensive review of the parties' arguments and the evidence presented, this Court cannot answer the relevant inquiry of whether the Debtor provided adequate assurance of payment in due time as mandated by the Bankruptcy Code. This question, therefore, must be answered in trial.

Further, Defendant's request for dismissal is without merit. The court finds that the allegations contained in the Complaint are specific, and the facts sustaining those allegations are complete and detailed sufficiently to defeat Defendant's request for dismissal.

12

WHEREFORE, IT IS ORDERED that Defendant's Motion for Summary Judgment and Plaintiffs' Counter Motion for Summary Judgment shall be, and they hereby are, DENIED. Clerk to schedule a final pre-trial hearing.

SO ORDERED.

In San Juan, Puerto Rico this 13th day of May 2020.

Brian K. Tester
U.S. Bankruptcy Judge

13